

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-164-CV

IN THE INTEREST OF S.W.
AND S.W., CHILDREN

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

**Introduction**

Appellant S.B. appeals the trial court's order terminating her parental rights to her children, S.W. and S.W.[2] In two issues, appellant contends that the trial court abused its discretion by denying her motion for continuance, and that the evidence presented at trial was factually insufficient to prove that

------------

[1] *See* Tex. R. App. P. 47.4.

[2] The names of the parent and children subject to this appeal have been replaced with initials in accordance with Texas Rule of Appellate Procedure 9.8. Tex. R. App. P. 9.8.

termination of the parent-child relationship was in her childrens' best interests. We affirm.

## Background Facts

On April 27, 2007, appellant gave birth to twin daughters (the twins). The twins were born prematurely, weighing approximately four pounds each when delivered, and both had heart murmurs which required them to be closely monitored during an extensive hospital stay. On May 29, 2007, upon their release from the hospital, the Texas Department of Family and Protective Services (the Department) removed the twins from appellant's custody and placed them with foster parents. The next day, the Department filed a petition to gain conservatorship of the twins and to terminate the twins' relationship with appellant. The trial court granted the Department temporary conservatorship and scheduled an adversary hearing under the Texas Family Code. *See* Tex. Fam. Code Ann. § 262.201 (Vernon Supp. 2008). Appellant received a copy of a "Family Service Plan" (service plan) from a Department caseworker in June 2007, which required her to participate in drug assessments, parenting classes, psychological evaluations, and counseling sessions, among other tasks. The trial court ordered that appellant comply with the service plan in July 2007. However, at the time of trial in April 2008, appellant had not completed any of the required services.

Appellant visited the twins twice in June 2007, and then left alone for Atlanta, Georgia in July 2007. Appellant returned to Texas around Thanksgiving of that year and visited the twins twice more before traveling back to Atlanta. Finally, appellant returned again to Texas and had two visits with the twins in March and April 2008. In total, from their removal from her custody in May 2007 until the termination trial in April 2008 (a period spanning almost eleven months), appellant saw the twins six times, for an hour on each occasion. During the visits, the twins often became agitated and began crying when separated from their foster mother.

On April 10, 2008, based in part on information received from appellant, the Department amended its petition for termination to name a new father of the twins. On April 15, 2008 (the trial date), the Department filed a motion to sever the alleged father from appellant's case, so that appellant's case could proceed to trial. That day, appellant moved for a continuance to allow her more time to complete her service plan, and she argued against the Department's severance motion. The trial court granted the severance, denied the continuance, and heard testimony from appellant and two Department employees on the termination petition.

The evidence established that appellant has given birth to a total of seven children, including most recently the twins. Appellant does not have custody

3

of any of her previous five children, and her parental rights have been terminated with respect to three of these children. During her pregnancy with the twins, appellant smoked marijuana, and she tested positive for marijuana at their birth. Appellant also testified that she smoked marijuana each of the two days preceding her termination trial, that she has had problems with drugs for eight years, and that she has never entered any drug rehabilitation program. Upon giving birth to her fifth child, appellant tested positive for marijuana and cocaine.

The evidence further indicated that appellant was unemployed but was looking for a job at fast food restaurants and grocery stores and was receiving $308 per month in social security insurance payments. Appellant said that upon finding employment, a sister (who has a theft conviction) had agreed that she would watch the twins while appellant worked. Testimony demonstrated that the twins had no place to permanently reside, had no options for placement with relatives, and had no medical insurance (though appellant testified that she would apply for benefits from Medicaid or the Children's Health Insurance Program). Also, appellant had no cribs or other supplies for the twins and had no stable transportation.

After the evidence was closed and counsel argued, the trial court terminated appellant's parental relationship with the twins. Specifically, the

4

trial court found that appellant (1) knowingly placed or knowingly allowed the twins to remain in conditions or surroundings which endangered their physical or emotional well-being, (2) engaged in conduct or knowingly placed the twins with persons who engaged in conduct which endangered their physical or emotional well-being, and (3) had previously had her parent-child relationship terminated with respect to another child based on an adverse finding regarding these previous two standards. *See* Tex. Fam. Code Ann. § 161.001(1)(D), (E), (M) (Vernon Supp. 2008). The court also found that termination of appellant's parental relationship with the twins was in their best interests. *Id*. § 161.001(2). Appellant timely filed this appeal.

## Denial of the Motion for Continuance

In her first issue, appellant contends that the trial court erred in denying her motion for continuance. We review a trial court's ruling granting or denying a motion for continuance for an abuse of discretion. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). We do not substitute our discretion for that of the trial court. *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding). Instead, we must determine whether the trial court's action was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Marchand*, 83 S.W.3d at 800. The focus is on whether the trial court acted without reference to guiding rules or principles.

5

*Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997). A motion for continuance shall not be granted except for sufficient cause supported by an affidavit, consent of the parties, or by operation of law. Tex. R. Civ. P. 251; *see also In re E.L.T.,* 93 S.W.3d 372, 374 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (noting that "to grant or deny a motion for continuance is within the trial court's sound discretion").

Appellant contends that a continuance should have been granted because she needed more time to complete her service plan and the twins' father's termination case was still pending; therefore, a delay in the proceedings would not have harmed the twins by delaying their permanent placement.

We have held that when a parent, through his or her own choices, fails to comply with a service plan and then at the time of the termination trial requests a continuance in order to complete the plan, the trial court does not abuse its discretion by denying the continuance. *See In re L.D.K.,* No. 02-07-00288-CV, 2008 WL 2930570, at *2–3 (Tex. App.—Fort Worth July 31, 2008, no pet.) (mem. op.); *see generally E.L.T.,* 93 S.W.3d at 374 (explaining that to be reversible, a denial of a continuance must be "so arbitrary as to exceed the bounds of reasonable discretion"). The record demonstrates that appellant received her service plan in June 2007, that the Department filed the service plan in July 2007, and that the trial court ordered appellant to

6

comply with the service plan's provisions later that same month. However, at the time of trial in April 2008, appellant had not completed *any* of the service plan's requirements.

Instead, appellant spent much of the time between June 2007 and April 2008 in Georgia for a temporary visit to "get away from trouble" and give her "peace of mind." Though acknowledging that she understood the service plan, appellant testified that she chose to travel to Georgia voluntarily and to neglect her service plan during her trip. In the time appellant was away, three documents were filed which indicated appellant was noncompliant with her service plan. Appellant similarly failed to complete her service plans during prior cases involving her other children.

Under these facts, we cannot conclude that the trial court abused its discretion by denying appellant's continuance for more time to complete her service plan.

Likewise, we are unpersuaded that a continuance should have been granted because the twins' father's case remained unresolved. The record indicates that the Department was proceeding with exploring permanent options for the twins. For instance, a Department caseworker testified that within a couple weeks of appellant's termination trial, she planned on beginning to study the placement options related to four families who had already submitted

7

adoption applications. Once a prospective adoptive family was chosen, the Department planned to begin scheduling interaction between that family and the twins. Further, appellant testified that the twins' father planned on continuing to reside in Georgia (making it unlikely that he would contest the termination proceedings against him).

Finally, we note that even if appellant had been granted more time to complete her service plan, she cannot demonstrate that the result of these proceedings would have changed because appellant's relationship with the twins was *not* terminated for failing to complete her service plan, but was instead terminated for other statutory reasons. For this reason as well, the trial court did not abuse its discretion by denying her motion for continuance.[3] *See In re H.B.*, No. 02-06-00102-CV, 2006 WL 3438193, at *2 n.6 (Tex. App.—Fort Worth Nov. 30, 2006, no pet.) (op. on reh'g) (mem. op.).

Therefore, we hold that the trial court did not abuse its discretion by denying appellant's motion for continuance. Accordingly, we overrule appellant's first issue.

---

[3] We are reviewing here evidence relative to the termination only for purposes of evaluating the trial court's discretion in granting or denying the continuance.

8

**Factual Insufficiency**

In her second issue, appellant contends that the evidence was factually insufficient to show that termination of her parental relationship with the twins was in their best interests.

**Standard of Review**

In reviewing the evidence for factual sufficiency in a termination case, we must give due deference to the fact-finder's findings and not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that termination of appellant's parental rights was in the best interest of the twins. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108. If we reverse on factual sufficiency grounds, then we must detail in our opinion why we have concluded that a reasonable fact-finder could not have credited disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002).

**Applicable Law**

A parent's rights to "the companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *C.H.*, 89 S.W.3d at 26. In a termination case, the State seeks not just to limit parental rights but to end them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (Vernon Supp. 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re E.M.N.*, 221 S.W.3d 815, 820 (Tex. App.—Fort Worth 2007, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must prove that termination

is in the best interest of the child.[4]  Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2008); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).  Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by clear and convincing evidence.  Tex. Fam. Code Ann. §§ 161.001, 161.206(a); *J.F.C.*, 96 S.W.3d at 263.  This intermediate standard falls between the preponderance standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings.  *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re C.S.*, 208 S.W.3d 77, 83 (Tex. App.—Fort Worth 2006, pet. denied).  It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  Tex. Fam. Code Ann. § 101.007.

Prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest.  Tex. Fam. Code Ann. § 263.307(a).  There is also a strong presumption that keeping a child with a parent is in the child's best interest.  *In re R.R.*, 209 S.W.3d 112, 116 (Tex.

---

[4] A petitioner must also prove that the parent has violated one of the several statutory provisions contained in the family code.  Tex. Fam. Code Ann. § 161.001(1).  However, appellant has agreed that a violation of at least one of these provisions was established at trial, and we will therefore limit our analysis to whether termination was in the twins' best interests.  *See id.* § 161.001(2).

11

2006).  Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1)     the desires of the child;

(2)     the emotional and physical needs of the child now and in the future;

(3)     the emotional and physical danger to the child now and in the future;

(4)     the parental abilities of the individuals seeking custody;

(5)     the programs available to assist these individuals to promote the best interest of the child;

(6)     the plans for the child by these individuals or by the agency seeking custody;

(7)     the stability of the home or proposed placement;

(8)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)     any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *C.H.*, 89 S.W.3d at 27.  On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*  These factors are not exhaustive; some listed factors may be inapplicable to some cases; other

12

factors not on the list may also be considered when appropriate. *Id.* For this reason, we will only discuss the factors which were made relevant by the evidence submitted at trial and will combine our analysis of factors where the evidence may concurrently apply.

**Analysis**

**The desires of the twins and the parental abilities of appellant**

While the twins were less than a year old at the time of the termination trial and could not therefore specifically express their desires, testimony at trial indicated that the twins were emotionally attached to their foster parents and had not bonded emotionally with appellant. However, permanent placement with the twins' foster parents was not an option, and a Department caseworker testified that the twins would need to develop a bond with any permanent placement, whether appellant or adopting parents. To that end, the evidence showed that appellant was loving, patient, and appropriate with the twins in her limited visits with them after removal. However, appellant chose to visit Georgia while her termination case was pending rather than complete her service plan, which may indicate that she was not motivated in developing her parental abilities.

13

**The present and future physical and emotional needs of the twins**

The evidence submitted at trial indicated that appellant was unprepared to care for the twins' physical needs. For instance, though testimony demonstrated that the twins would continue to have minor medical issues, including the possible need for outpatient surgery, appellant had not applied for insurance for the twins at the time of trial. The evidence also showed that appellant may not have been aware of the twins' medical needs. For instance, though the twins had heart murmurs which required them to be closely monitored at the hospital for more than a month following their birth, when asked about whether the twins had medical problems at birth, appellant responded that they were "just premature."

The evidence also established that appellant did not have a job (though she was looking for work, she had not maintained employment since 1998), was receiving only $308 per month in social security insurance, had little formal education (she dropped out of school in the ninth grade), had no place set up for the children to reside (though she was on the waiting list for Section 8 housing), had no means of transporting the twins (other than possible public transportation), and had no cribs or other supplies needed by infants. Finally, though appellant had given birth to five previous children, she did not raise any of these children.

14

**The present and future potential emotional and physical danger to the twins, the acts or omissions of the appellant which may indicate that the existing parent-child relationship is not a proper one, and any excuse for appellant's acts or omissions**

Extensive testimony at trial indicated that appellant had a long-standing, persistent drug problem. For instance, appellant had been smoking marijuana for eight years, used marijuana while pregnant with the twins, used cocaine while pregnant with a previous child, and had never attempted to enter a drug rehabilitation program. Further, though appellant recognized that the twins should not be around drugs and offered to seek counseling for her drug issues, she admitted to smoking marijuana on each of the two days preceding the termination trial and indicated that marijuana was her "drug of choice."

**The plans for the twins by the Department and the stability of their proposed placement**

As noted, at the time of trial, four families had already expressed interest in adopting the twins together. The Department was ready to proceed with studying those options and was confident that a loving home could be found for the twins. Prompt and permanent placement for the twins therefore seemed to be a very attainable goal. In contrast, appellant indicated at trial that she was requesting that the court give her more time to complete her service plan and that the issue of permanent placement could be decided at a later date.

15

We hold that these facts, applied cumulatively to the *Holley* factors, enabled the trial court to reasonably form a firm conviction or belief that termination of appellants's parental rights was in the twins' best interests. *C.H.*, 89 S.W.3d at 28.  We therefore overrule appellant's second issue.

**Conclusion**

Having overruled both of appellant's issues, we affirm the trial court's order terminating appellant's parental rights to S.W. and S.W.


TERRIE LIVINGSTON
JUSTICE


PANEL: CAYCE, C.J.; LIVINGSTON, AND MCCOY, JJ.

CAYCE, C.J. dissents without opinion.

DELIVERED: October 9, 2008