NUMBER 13-05-223-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

IN RE: JENNIFER HILLIARD

 

                                  On
Petition for Writ of Mandamus

 

 

                               MEMORANDUM
OPINION

 

                         Before
Justices Hinojosa, Yañez, and Garza

                            Memorandum
Opinion by Justice Yañez

 

Relator, Jennifer Hilliard, has filed a petition for
writ of mandamus challenging an order disqualifying her attorney, James
Harris.  We conclude that the respondent,
the Honorable Jose Longoria of the 214th District Court of Nueces County,
Texas, abused his discretion in disqualifying relator=s counsel. 
Accordingly, we conditionally grant the writ.

                                                                     Mandamus








To be entitled to mandamus relief, relator must show
that the trial court committed a clear abuse of discretion and that she has no
adequate remedy by appeal.  In re Ford Motor Co., 165 S.W.3d 315,
317 (Tex. 2005) (orig. proceeding); In re Nitla S.A. de C.V., 92 S.W.3d
419, 422 (Tex. 2002) (orig. proceeding) (per curiam).  A
trial court abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to amount to a clear and prejudicial error of law, or if it
clearly fails to correctly analyze or apply the law.  Walker v. Packer, 827 S.W.2d 833,
839-40 (Tex. 1992).  

Mandamus is appropriate to correct an erroneous order
disqualifying counsel because there is no adequate remedy by appeal.  In re Sanders, 153 S.W.3d 54, 56 (Tex.
2004) (per curiam); see Nitla, 92 S.W.3d at 422.

                                                                    Background

This original proceeding arises from a suit brought
by Jennifer Hilliard to enforce the payment of spousal maintenance by her
former husband, Robert C. Hilliard.  When
the Hilliards divorced, they entered into an Agreement Incident to Divorce (AAgreement@), signed January 14, 1999, which awarded Jennifer
approximately three million dollars in spousal alimony.  This Agreement was incorporated in and made a
part of the final divorce decree on January 18, 1999.  Robert stopped making alimony payments after
paying Jennifer approximately two million dollars.  

In 2003, Jennifer, represented by attorney Ronald A.
Simank, brought suit to enforce the Agreement. 
In 2004, Jennifer retained attorney James R. Harris as additional
counsel and as an expert witness.  Robert
moved to disqualify Harris from representing Jennifer based on Harris=s prior representation of Robert in a grievance
proceeding initiated by the Texas Supreme Court.  See Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706 (Tex. 1997) (op. on reh=g).








With regard to Harris=s representation of Robert, the record shows that,
from May 1998 to October 1998, Harris represented Robert in a grievance
proceeding arising from Robert=s motion for rehearing in Havner.  Robert=s strident motion for rehearing essentially  accused the Texas Supreme Court of failing to
follow established precedent and suggested that the Texas Supreme Court was
engaging in judicial tort reform in favor of certain special interests.  Finding the tenor of Robert=s motion for rehearing objectionable, the Texas
Supreme Court referred Robert to the Texas State Bar Grievance Committee for
professional misconduct.  In the
grievance proceeding, Robert contended that the allegedly objectionable
statements in his motion for rehearing were true, or were based on his good
faith belief or opinion.  Robert further
contended that his statements were matters of opinion which were protected as
free speech under the first amendment and the Texas Constitution.  The grievance against Robert was ultimately
dismissed.  

            In the motion to disqualify, Robert
argues that the Havner grievance proceeding and the spousal maintenance
suit are substantially related insofar as the Havner grievance arose from
his belief that the Texas Supreme Court was engaging in judicial tort reform
and, in the spousal maintenance suit, Robert contends his inability to continue
to pay spousal maintenance is the result of the impact of tort reform on his
law practice.  According to Robert, the
amount of spousal maintenance due to Jennifer under the Agreement was
calculated based on Robert=s estimated income based on his law practice, and
tort reform reduced Robert=s estimated income. 

The Honorable Jose Longoria disqualified Harris.  According to the order of disqualification:








. . . Harris was paid over $50,000.00 in legal fees
from Hilliard for previously representing him in 1998 in a matter involving a
grievance arising from a decision by the Texas Supreme Court on a tort claim
brought by Kelly Havner against Merrell Dowell [sic] Pharmaceutical in which
Robert C. Hilliard argued that the results of the opinion were motivated by
judicial tort reform and not the merits of the case or law; and as a result
Harris has previously represented Robert Hilliard in a >substantially related= matter involving the same or similar issue of law,
liability, defenses and affirmative claims, and strategies regarding tort
reform and Robert Hilliard=s response to tort reform in 1997 and 1998, at or
about, and during the time of the divorce proceeding at issue in this case . .
. and the issue of tort reform and Robert C. Hilliard=s understanding, familiarity, opinions, and
strategies was a significant issue in the prior representation by Harris, and
is a significant issue in this case now pending before this Court, and a
significant defense of Robert C. Hilliard to the claims of Jennifer HIlliard in
this case now pending before this Court; and it appearing from the testimony and
record in this case that James R. Harris represented Jennifer Hilliard in the
planning of her case, and in her trial strategies to a significant extent well
before August, 2004 and well after formally appearing in this case and after
the written objection immediately made by Robert C. Hilliard upon such formal
notice . . . . 

 

                                                                 Disqualification








We review a trial court's ruling on a motion to
disqualify under an abuse of discretion standard.  Henderson v. Floyd, 891 S.W.2d 252,
254 (Tex. 1995) (per curiam). Disqualification is a severe remedy.  In re Cerberus Capital Mgmt., L.P.,
164 S.W.3d 379, 382 (Tex. 2005); Sanders, 153 S.W.3d at 57; Nitla,
92 S.W.3d at 422.  Disqualification can
result in immediate and palpable harm, disrupt trial court proceedings, and
deprive a party of the right to have counsel of choice.  Nitla, 92 S.W.3d at 422.  Therefore, in considering and deciding a
motion to disqualify counsel, the trial court must Astrictly adhere to an exacting standard to discourage
a party from using the motion as a dilatory trial tactic.@  Id.  The
party seeking disqualification bears the burden of establishing conduct that
violates the disciplinary rules or otherwise warrants disqualification  Id. 
The disciplinary rules provide guidelines for deciding disqualification
issues; however, they are not controlling standards, and in "appropriate
circumstances" a lawyer may be disqualified even if he or she has not
violated a specific disciplinary rule.  Id.;
In re Bivins, 162 S.W.3d 415, 417‑18 (Tex. App.BWaco 2005, orig. proceeding).  

Even if a lawyer violates a disciplinary rule, the
party requesting disqualification must demonstrate that the opposing lawyer's
conduct caused actual prejudice that requires disqualification.  Nitla, 92 S.W.3d at 422; In re
Users Sys. Servs., Inc., 22 S.W.3d 331, 336 (Tex. 1999); In re Meador,
968 S.W.2d 346, 350 (Tex. 1998); In re Southwestern Bell Yellow Pages, Inc.,
141 S.W.3d 229, 232 (Tex. App.BSan Antonio 2004, orig. proceeding).  The mere allegation of potential prejudice is
insufficient to warrant the extreme remedy of disqualification.  Southwestern Bell Yellow Pages, Inc.,
141 S.W.3d at 232; Ghidoni v. Stone Oak, Inc., 966 S.W.2d 573, 579 (Tex.
App.BSan Antonio 1998, pet. denied).  

The disciplinary rule at issue in the instant case is
Texas Rule of Disciplinary Conduct 1.09. 
See Tex. Disciplinary R.
Prof'L. Conduct 1.09, reprinted in Tex.
Gov't Code Ann., tit. 2, subtit. G app. A (1998) (Tex. State Bar R. art. X, ' 9).  This rule
provides that, without prior consent, a lawyer who has formerly represented a
client in a matter shall not thereafter represent another person in a matter
adverse to the former client if, inter alia, the representation will, in
reasonable probability, involve a violation of rule 1.05, prohibiting the
disclosure of confidential information, or Aif it is the same or a substantially related matter.@  See id.  Rule 1.05(b)(3) prohibits an attorney from
using the confidential information of a former client, unless the former client
consents to use of the confidential information, or the confidential
information has become generally known.  See
id. 








To determine whether a lawyer should be disqualified
for having represented the adverse party in an earlier suit, the court must
decide if the two suits are Asubstantially related.@  Metro.
Life Ins. Co. v. Syntek Fin. Corp., 881 S.W.2d 319, 320 (Tex. 1994).  The "substantial relationship" test
as applied by the courts in similar cases does not originate in the
disciplinary rules, but in the common law. 
In re Cap Rock Elec. Coop., 35 S.W.3d 222, 230 (Tex. App.BTexarkana 2000, orig. proceeding) (citing In re
Am. Airlines, Inc., 972 F.2d 605, 617 (5th Cir. 1992)). 

To show that a substantial relationship requiring
disqualification exists, the party seeking disqualification must prove that the
facts and issues involved in both the former and present litigation are so
similar that there is a genuine threat that confidences revealed to the party's
former counsel will be divulged to his present adversary.  In re Epic Holdings, Inc., 985 S.W.2d
41, 51 (Tex. 1998) (orig. proceeding); NCNB Tex. Nat'l Bank v. Coker,
765 S.W.2d 398, 399‑400 (Tex. 1989) (orig. proceeding); In re Bell
Helicopter Textron, Inc., 87 S.W.3d 139, 146 (Tex. App.BFort Worth 2002, orig. proceeding); see also
Texaco, Inc. v. Garcia, 891 S.W.2d 255, 257 (Tex. 1995) (orig. proceeding)
(holding that substantial relationship existed where cases involve similar
liability issues, scientific issues, defenses, and strategies). 








The movant for disqualification is required to
establish a substantial relationship by a preponderance of the facts.  Cap Rock Elec. Coop., 35 S.W.3d at
230.  The movant has the burden of
producing evidence of such specific similarities capable of being recited in
the disqualification order.  Coker,
765 S.W.2d at 400; Relators Bell Helicopter Textron, Inc., 87 S.W.3d at
146; Cap Rock Elec. Coop., 35 S.W.3d at 230; see also Troutman v.
Ramsay, 960 S.W.2d 176, 178 (Tex. App.BAustin 1997, orig. proceeding). 

                                                                       Analysis

Having reviewed the pleadings and evidence, we
conclude that the trial court abused its discretion in finding that the
grievance proceeding and the spousal maintenance suit are substantially
related.  The grievance proceeding
involved the interaction between the right to freedom of speech and the
professional requirements imposed upon attorneys by the Texas Disciplinary
Rules of Professional Conduct.  In
contrast, the spousal maintenance suit involves Robert=s ability, or lack thereof, to pay alimony as stated
in the Agreement. 








Robert contends that in the grievance proceeding he
shared his opinions about judicial tort reform with Harris and that judicial
tort reform is the reason that he cannot pay spousal alimony in the instant
suit.  However, this allegation simply
does not establish a substantial relationship between the two proceedings.  The two matters do not involve similar facts,
liability issues, scientific issues, defenses, or strategies.  While tort reform may well have impacted
Robert financially, an issue we do not address herein, his opinions about tort
reform during the Havner proceeding, or at the present time, can hardly
be said to affect Robert=s ability to comply with the Agreement.  We conclude that the matters are not substantially
related.  And further, we would note that
Robert=s attitudes and opinions regarding tort reform cannot
be said to constitute Aconfidences.@  His feelings
are clearly and abundantly detailed in the Havner motion for rehearing
and the affidavit that he provided to the grievance committee, both of which
are a part of the record herein. 
Finally, the record before us is devoid of any evidence that Harris=s representation of Jennifer has caused Robert actual
prejudice or harm.  See Nitla, 92
S.W.3d at 422.    

                                                                     Conclusion

We do not lightly grant the writ of mandamus in this
matter.  The ethical implications and
pragmatic considerations that arise when a lawyer represents one client, and
subsequently represents an opposing party against that same client, are
multitudinous and difficult.  The
problems involved are often insurmountable. 
Fundamentally, we believe that such representations are generally
avoided by most practitioners out of an abundance of caution.  However, we must balance the problems and
difficulties arising from such a sequential representation against a party=s right to be represented by counsel of her
choice.  Accordingly, Texas courts have
derived the substantial relationship test to ascertain whether counsel should
be disqualified.  

Applying the substantial relationship test, we
conclude that Robert failed to meet his burden to prove that the facts and
issues involved in the grievance proceeding and the alimony litigation are
substantially related.  Further, Robert
failed to establish actual prejudice. 
Accordingly, the trial court abused its discretion by granting the
motion to disqualify.  Jennifer has no
adequate remedy at law.  Therefore, we
conditionally grant the requested writ of mandamus. The writ will issue only if
the trial court fails to advise this Court in writing within fourteen days
after the date of this opinion that it has vacated the order granting the
motion to disqualify.

 

_______________________

LINDA REYNA YAÑEZ,

Justice

 

Memorandum opinion delivered and filed              

this the 27th day of April, 2006.