# Supreme Court of Texas

No. 26-0030

In re S.H.,
*Relator*

On Petition for Writ of Mandamus

**PER CURIAM**

Relator S.H. is a parent simultaneously facing criminal prosecution and proceedings to terminate her parental rights to her children. After verifying S.H.'s indigence, the district court presiding over her parental-termination case appointed counsel for her. The Harris County Public Defender's Office (the "Office"), which was representing S.H. in her criminal case, later agreed to represent her in the parental-termination proceedings too. The district court removed the Office's lawyer who appeared on S.H.'s behalf, concluding that the court alone had the authority to appoint counsel for S.H. This removal order was a clear abuse of discretion. We therefore conditionally grant mandamus relief and direct the district court to withdraw that order.

The conflict central to this petition arose because of S.H.'s parallel criminal and parental-termination proceedings. On June 11, 2025, the Department of Family and Protective Services filed a termination action

against S.H., and the court appointed Margaret Lombardo as temporary attorney ad litem to represent S.H. until it could determine whether S.H. was "indigent and entitled to a court appointed attorney." Two days later, a different trial court ordered the Office to represent S.H. in a concurrent criminal case against her. On June 16, the parental-termination court determined that S.H. was, in fact, indigent, and elevated her temporary attorney ad litem to a permanent attorney ad litem for the duration of the case. Then, on June 20, the Office agreed to represent S.H. in her parental-termination proceedings as well.

The public defender, Christine Umeh, entered an appearance of counsel in S.H.'s parental-termination case before filing an answer and a motion to substitute counsel on S.H.'s behalf. At the adversary hearing on the removal of S.H.'s children, the presiding associate judge questioned Umeh about her role in the case. He stated the need to confer with the district judge but expressed doubt about "what authority [he would] even have" to "prevent a mom from choosing her own counsel."

Two days later, however, the district judge signed two orders. The first denied Umeh's motion to substitute as counsel. The second removed Umeh as counsel. According to that order, because the Office "is a governmental entity established pursuant to Art. 26.044 Code Crim. Pro.[,] . . . it is only authorized to provide legal representation and services to indigent defendants accused of a crime or juvenile offense." In the court's view, parental-termination cases fall outside that definition, so the court "removed" Umeh as counsel and "appointed" Lombardo. The court also opined that the Office had "impermissibly

2

usurped the judicial functions of determining a parent's indigence and the appointment of counsel."

S.H. filed a petition for writ of mandamus challenging the removal order. The court of appeals summarily denied the petition. ___ S.W.3d ___, 2025 WL 3768103, at *1 (Tex. App.—Houston [1st Dist.] Dec. 31, 2025). S.H. then sought mandamus relief from this Court. We conclude that mandamus relief is warranted.

This Court has repeatedly recognized parental-termination cases as unique within the civil system. Today's case illustrates one reason why. Parents facing termination of parental rights are entitled to appointed counsel, which is generally unavailable in other civil litigation. *See D.V. v. Tex. Dep't of Fam. & Protective Servs.*, 722 S.W.3d 854, 858 (Tex. 2025) (citing TEX. FAM. CODE § 107.013(a)). It is also well-established in the civil context, however, that parties have the right to choose their counsel and that deprivation of this right can justify mandamus relief. *See, e.g., In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382-83 (Tex. 2005) (noting that being deprived of the counsel of one's choosing is a harm that can give rise to mandamus relief). Drawing analogies from the criminal context, the only other place we see the right to court-appointed counsel, a defendant who does not need appointed counsel may retain any properly qualified attorney to represent her, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Gonzalez v. State*, 117 S.W.3d 831, 836-37 (Tex. Crim. App. 2003), even if indigent recipients of court-appointed representation may be limited to the offer of counsel provided by the government, *see, e.g.,*

3

*King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Burgess v. State*, 816 S.W.2d 424, 428-29 (Tex. Crim. App. 1991).

"Mandamus is appropriate to correct an erroneous order disqualifying counsel because there is no adequate remedy by appeal." *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004). Disqualification—which is functionally what was achieved by the trial court's sua sponte "removal" of counsel—is "a severe remedy" that "can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (quotation marks omitted).

S.H.'s chosen counsel happens to be a public defender. The Code of Criminal Procedure authorizes county commissioners courts to create public defender's offices and provides guidelines for their operations. *See* TEX. CODE CRIM. PROC. art. 26.044(b), (i), (j). These guidelines include prohibitions against "engag[ing] in the private practice of criminal law," "accept[ing] anything of value" for the defenders' services beyond what the statute specifically authorizes, and accepting an appointment when the office "has insufficient resources to provide adequate representation." *Id.* art. 26.044(i)(1)-(2), (j)(2).

The statute is silent about providing parallel civil services like those the Office offered S.H. Instead, it directs the county commissioners court to "specify . . . the duties of the public defender's office." *Id.* art. 26.044(b)(1). It is undisputed that the Harris County Commissioners Court has chosen to expand the Office to provide "holistic services" like "social security benefit application support, parole application support, [and] family law advocacy." It was on this basis

4

that the Office offered to represent S.H. in her parental-termination case, and no statutory limitation bars the Office from providing such services.

This brings us to the conflict between Umeh (counsel from the Office) and Lombardo (counsel appointed by the court). Under the Family Code, a district court "shall appoint an attorney ad litem to represent . . . an indigent parent" in a parental-termination suit brought by the Department. TEX. FAM. CODE § 107.013(a)(1). The district court properly did so by appointing Lombardo after determining that S.H. was indigent. The conflict arose, however, because the court deemed Umeh's appearance as S.H.'s counsel a "usurp[ation of] judicial functions." The court stated that the Office improperly intruded upon the court's role in determining indigence and appointing counsel.

This conclusion was erroneous. As Umeh made clear at the adversary hearing, she is not purporting to be S.H.'s *court-appointed* counsel in the parental-termination proceedings. Rather, she appeared as S.H.'s *chosen* counsel, who happens to be providing those services through the Office at no cost to S.H.

Just as an indigent parent in a parental-termination case might be represented by a nonprofit organization, the Office provided its services outside the scope of the court's appointment authority. Nothing about the Office's representation of S.H. constitutes a judicial determination of indigence or supplants the authority of the district court. If a parent deemed indigent were provided with court-appointed counsel before a wealthy relative learned of her plight and hired an

attorney for her, the district court could hardly use Section 107.013 to prevent the parent from choosing to use that retained counsel.

We see no basis to treat this matter any differently. We are aware of no legal impediment to the Office's authority to represent S.H. Nor is the Office subject to the district court's authority or oversight in its retention of clients—or, more precisely, the Office is subject to the very same authority that a court always has over all lawyers appearing before it, regardless of a party's indigence or wealth. Court-appointed counsel remains an important protection that many parents will desperately need, including parents who may start with outside counsel but eventually need the court's assistance in securing counsel capable of representing them in difficult and draining parental-termination proceedings.

One final complication in this case is that S.H. did not seek relief from this Court from the order denying her motion for substitution of counsel, but only from the trial court's removal order. The two orders are linked, however. The order removing Umeh necessarily meant that there was no basis to substitute counsel. While our decision today formally addresses only the removal order, its effect is to require the district court to allow S.H. to proceed with Umeh as the lead counsel of her choosing. The district court should expeditiously resume proceedings on that basis. The parties have informed this Court of the need for clarity and expedition in this case so that S.H.'s children can receive the specialized care and stability they need. We recognize that similar needs warrant expedition in all such cases.

Without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we therefore conditionally grant mandamus relief and direct the trial court to vacate its order removing Umeh as S.H.'s counsel.  We are confident the trial court will comply, and our writ will issue only if it does not.

**OPINION DELIVERED:** June 5, 2026